Reading Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 25, 1957. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Allen Lesley,* with him *W. I. Woodcock, Jr.,* for appellant.

*Howard L. Criden,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for appellee.

OPINION BY GUNTHER, J., June 11, 1957:

This is an appeal from the order of the Pennsylvania Public Utility Commission denying an application to discontinue the sale of passenger tickets at Fisher's Station on appellant's Germantown and Chestnut Hill Branch.

The application was filed on January 25, 1955. Protests were filed, hearings were held, and the Commission, by order dated October 29, 1956, denied the application by majority vote with Commissioner Houck filing a dissent. The order reads as follows: "The record in this proceeding shows that ticket sales at Fishers station increased substantially between 1952 and 1954 and that revenue contrary to the general railroad trend has remained substantially constant at more than double the cost of maintaining the agent at the station. The record further shows that removal of the agent would result in inconvenience to passengers and the creation of a possible hazard to their safety and welfare while on the property of the carrier. Upon full consideration of the record, we are of opinion and find that approval of the application should be denied; Therefore, It is Ordered: That approval of the application be and is hereby denied."

Appellant contends that the above order is arbitrary, capricious, unreasonable and not supported by substantial evidence of reasonable probative value. In making the order, appellant argues that the commission failed to consider the decision in the case of *Rydal-Meadowbrook Association v. Pennsylvania Public Util-*

*ity Commission,* 173 Pa. Superior Ct. 380, 98 A. 2d 481.

Article XI, Section 1107, as amended (66 P.S. Sec. 1437) provides: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights."

Does the record contain substantial evidence to support the order of the commission, or is it capricious and unreasonable?

Evidence introduced by the Company in support of its application showed a deficit of $7,973.64 in 1952, a deficit of $8,924.45 in 1953, and a deficit of $7,262.23 in 1954. William E. Steptoe, assistant to the comptroller of Reading Company, testified that: "The cost of providing agency service at a station such as Fishers should only amount to a small proportion of the station revenue, considering the manpower, equipment and other facilities required in connection with the transportation of the passengers."

Appellant takes the position that it is in the public interest to reduce its large losses in passenger service by eliminating disproportionate expense wherever possible. In support of its position, the Company read into the record its losses from operation of its passenger service, amounting to $22,813,854 during the years 1952, 1953 and 1954. The evidence also revealed that the ratio of expense of maintaining the Fisher Station to the gross revenues received at the station was 49.68 per cent in 1952, 46.49 per cent in 1953 and 45.52 in 1954, that the ticket agent is on duty at Fisher's station an average of 254 days annually; that he sells passenger tickets, accounts for them and gives information relative to passenger service; that no freight or mail are handled at this station; and that local tickets and round-trip tickets may be purchased on trains without

additional charge or penalty. The Commission made no finding that the public would be inconvenienced by the discontinuance of the sale of the one-way and shoppers' tickets because they need not be purchased in advance. Foreign and commutation tickets, it was shown, may be purchased at any agency station such as Wayne Junction, North Broad Street and Reading Terminal.

A total of eleven witnesses testified against eliminating the ticket agent. They stated they would be inconvenienced by the change to a non-agency station. The record however reveals that any inconvenience resulting from the change would be inconsequential. In 1954, 88 per cent of all tickets sold were one-way and round trip; in 1955, this percentage was 86.8 per cent. Of an average of 52 tickets sold by the agent per working day, only six were multiple ride and commutation tickets and could have been purchased at the Wayne Junction Station or at the Reading Terminal in Philadelphia. The evidence shows that it costs on the average between thirty cents and thirty-four cents to sell a twenty-nine cent local ticket.

The Commission gives two reasons for its order: First, the increase in revenue between 1952 and 1954 and, second, the conversion to a non-agency station would jeopardize safety of its riders. The second argument is refuted by the fact that for the greater part of every day and for all week-ends and holidays there is no agent on the premises (and safety did not seem to be jeopardized). As to the argument that revenues have increased between 1952 and 1954, we must take into consideration the over-all picture of the financial revenues of the whole system which we have touched upon in above paragraphs of this opinion.

The findings of the Commission are not supported by substantial evidence in the record.

The order of the Commission is reversed.